UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ELIZABETH ELINKNAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RP FIELD SERVICES, LLC and NATIONAL CREDITORS CONNECTION, INC.,<br><br>Defendants. | Civil Action No.: 4:18cv108 |

**COLLECTIVE ACTION COMPLAINT AND
DEMAND FOR TRIAL BY JURY**

Plaintiff Elizabeth Elinknan, individually and on behalf of all others similarly situated, by and through her undersigned counsel, for her Collective Action Complaint against Defendants, alleges as follows:

**INTRODUCTION**

1. Plaintiff brings these claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.* against Defendants, RP Field Services, LLC ("RP") and National Creditors Connection, Inc. ("NCCI") for misclassifying their Field Service Representatives as "independent contractors" and failing to pay overtime and/or minimum wage compensation for all hours worked.

2. Plaintiff and all similarly situated persons who worked as Field Representatives performed non-exempt duties and are entitled to overtime pay, minimum wages, liquidated damages, and attorney fees as allowed by the FLSA.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as Plaintiff's claims are brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* and, more particularly, 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any federal or state court of competent jurisdiction."

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the acts and omissions giving rise to the claims set forth herein occurred in this District.

## THE PARTIES

5. Plaintiff, Elizabeth Elinknan ("Plaintiff"), is an adult resident of the State of Georgia.

6. Plaintiff has consented in writing to be a party to this FLSA action pursuant to 29 U.S.C. § 216(b). Her Consent Form is attached hereto as Exhibit "A." As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

7. Plaintiff currently works as a Field Representative for Defendants and has done so in Savannah, Georgia and the surrounding area since Defendants hired her in October 2015.

8. Defendant RP Field Services, LLC, is a foreign limited liability company domiciled in the State of South Carolina but conducting business within the State of Georgia and the jurisdiction of this Court. According to various online sources, "RP Field Services is an exclusive regional vendor for National Creditors Connection, Inc. . . ." and "has had a contractual relationship with NCCI since 2001." Its services include field contact services, on-site inspections, and letter deliveries in 16 states throughout the United States.

9. Defendant National Creditors Connection, Inc. ("NCCI") is a foreign corporation, domiciled in the State of California, but conducting business in the State of Georgia and within the jurisdiction of this Court. According to its website, NCCI is "the nation's leader in field contact services since 1992." Its services include face-to-face contact with customers (debtors), loss mitigation, inspection, and business process outsourcing.

## COVERAGE UNDER THE FLSA

10. Defendants each have annual gross volume of sales made or business done of $500,000 or greater in accordance with 29 U.S.C. § 203(s)(1)(A)(ii).

11. Plaintiff is an "employee" of Defendants within the meaning of the FLSA and was engaged in interstate commerce as defined by 29 U.S.C. § 206(a) and § 207(a)(1).

12. Defendants are covered employers as defined by 29 U.S.C. § 203(d).

13. Defendants have employed two or more persons, including Plaintiff, who are or were "engaged in commerce or in the production of goods for commerce," or have had "employees handling, selling, or otherwise working on goods or materials that have been moved and/or produced for commerce by any person," as defined by 29 U.S.C. § 203(s)(1)(A)(i).

14. Defendants' workers, including Plaintiff and all Field Representatives, are subject to the provisions of 29 U.S.C. § 206.

15. Plaintiff alleges that Defendants' uniform payroll practice deprives Plaintiff and those similarly situated Field Representatives overtime and/or minimum wages, in violation of the FLSA.

**FACTUAL ALLEGATIONS**

**I.     The Work Performed By Plaintiff and Similarly Situated Field Representatives**

16.     Plaintiff is employed by Defendants as a Field Representative.  The job of a Field Representative is to make contact with a debtor, which Defendants refer to as "customers", who are in default or arrears, in order to deliver collection material, to instigate a cell phone call between Defendants and the debtor, and to photograph the collateral that is the subject of the debt.  As part of her employment, Plaintiff and all Field Representatives are governed by specific written job duties imposed jointly by Defendants.

17.     The job duties of Field Representatives include but are not limited to the following:

   a.   Make a "Field Contact" (actual contact) with the customer (debtor);

   b.   Verify and/or update customer and collateral/security property information;

   c.   Deliver to the customer or leave at customer's home, as appropriate, a contact letter;

   d.   Perform inspections of the customer's property;

   e.   Perform scripted interviews with customers;

   e.   Take photographs of the customer's collateral and visited address; and

   e.   Upon making contact with the customer, encourage customer to immediately contact lender/servicer and provide the use of cell phone if necessary to facilitate that call.

18.     After such a field contact is made, the Field Representative is required to email a written report summarizing the results of the field contact which must include the customer's

name and account identification, date, time, and location of the contact, and include digital photos of the collateral and the visited address.

19. Defendants prohibit Field Representatives from making any representations to the customers. Defendants also instruct Field Representatives they shall treat all customers in a fair, courteous and professional manner, and must not do anything to cause a breach of the peace, violation of law or of the customer's rights, or threaten the safety of any person.

20. Plaintiff and all similarly situated Field Representatives are provided with the customer contact information from Defendants and are paid based on the success of a customer contact. Pay is regulated by Defendants' description of services and fees. For example, a base fee paid to a Field Representative who successfully establishes contact with a customer is $25 whereas an attempt without success is $14.

21. Other payments range from $7 for delivering a letter to a customer and up to $75 for actually performing a scripted interview with a customer.

22. Other fees are paid for driving by locations and taking photos from the car ($10) or visiting a merchant site to verify that the business is legitimate ($20).

23. The regulated and well defined job duties performed by all Field Representatives uniformly do not qualify for any exemption from the overtime requirements of the FLSA. These job duties constitute non-exempt employment.

24. Plaintiff and all similarly situated individuals do not receive overtime compensation in weeks that they work over 40 hours. Rather, they are paid only the flat fees described above, without any overtime premium, in violation of the FLSA.

25. The number of hours Plaintiff works each week varies depending on the volume of work Defendants assign in a particular week. Plaintiff estimates that her workweeks have

ranged from as few as 20 to 25 hours to as many as 70 or more. This estimate includes, for instance, time spent driving, preparing and routing assignments, uploading photos, and completing daily reports.

26. For example, within the seven day period of November 23 to November 30, 2017, Plaintiff estimates that she worked approximately 71 hours, starting her work at approximately 8 a.m. and ending at approximately 8 p.m. several of those days. Defendant did not compensate her with an overtime premium for the overtime hours she worked during that time period.

27. Field Representatives are also required to bear many of the expenses of their employment, such as the costs of wear and tear/depreciation on their personal vehicles, the costs of fuel, ink (used for printing letters addressed to customers), internet service, and applications on their mobile phones. Defendants did not reimburse Field Representatives for these expenses, and Field Representatives were solely responsible for paying them out-of-pocket.

28. The Internal Revenue Service ("IRS") sets a standard mileage reimbursement rate that is meant to apply to the average driver. During the applicable period, the IRS business mileage reimbursement rate ranged from $0.535 to $0.575 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.426 and $0.592 per mile during the same period.

29. Defendants' failure to reimburse automobile expenses constitutes a "kickback" to Defendants such that the wages paid to Plaintiff and other Field Representatives are not paid free and clear of all outstanding obligations to Defendants.

30. In light of the unreimbursed expenses Field Representatives must bear, there are workweeks when Field Representatives do not earn the federal minimum wage of $7.25 per hour for all hours worked.

31. Defendants were aware that Plaintiff and other Field Representatives were not paid the minimum wage, and that they worked overtime hours, because they scheduled or permitted Field Representatives to work more than 40 hours in a workweek and set compensation rates that resulted in Field Representatives' earnings falling below federal minimum wage requirements (when taking into consideration total hours worked and expenses). They were also aware of the hours worked because of reports these individuals submitted, and apps or programs that tracked their daily tasks and location.

## II.    Plaintiff and All Similarly Situated Field Representatives Are Misclassified As Independent Contractors

32. Plaintiff and all similarly situated Field Representatives who work for Defendants are uniformly misclassified as independent contractors when, in fact, they are employees. Defendants require Plaintiff and all similarly situated Field Representatives to sign illegal and void "Field Contract Services Agreements" which purport to describe the legal relationship between Plaintiff and Defendants as an independent contractor.

33. Plaintiff executed her Field Contract Services Agreement ("Agreement") on October 1, 2015.

34. Although contradicted by the written rules, policies, procedures and requirements with which Plaintiff and all Field Representatives must comply, the Agreement claims that Field Representatives are "independent contractors."

35. Plaintiff and all similarly situated Field Representatives were provided little or no discretion or independent judgment in the method and manner that their work was performed.

7

Instead, all aspects of the Field Representatives' job duties were controlled by Defendants' policies and procedures.

36. Defendants regulated the Field Representatives' attire by implementing a mandatory dress code policy. This policy required the Field Representatives to adhere to professional standards of dress and appearance that are compatible with the professional appearance of NCCI and its clients. Plaintiff and all similarly situated Field Representatives were prohibited from wearing clothing which was soiled, torn, see through, profane, offensive or obscene. Further, the dress code policy prohibited exposed undergarments, sagging pants, excessively short garments, bare midriff, t-shirts or tank tops, shorts, athletic shoes, sandals, symbols, styles or attire associated with intimidation or violent groups.

37. Defendants required Plaintiff and all similarly situated Field Representatives to wear and display an NCCI photo identification badge which must be hanging on a lanyard around the neck.

38. Defendants conduct a seven year national criminal background check on every Field Representative in order to determine if the Field Representative qualifies for the job position.

39. Upon information and belief, NCCI provides $5,000,000.00 in liability and errors and omissions insurance coverage under a master policy that covers all Field Representatives.

40. Field Representatives are covered by NCCI state licenses in those states that require licensing to operate as a Field Representative.

41. Plaintiff and all similarly situated Field Representatives were required to comply with Defendants' Procedures Manual which is 36 pages in length. The Procedures Manual

thoroughly regulates all aspects of the Field Representative's daily activities in minute and excruciating detail.

42. The Procedures Manual provides step-by-step instructions for the Field Representative to prepare for a call. These steps include logging in and checking the manifest, reviewing the field contract request form, and confirming the address and debt type, as well as collateral.

43. Instructions are provided in it on how to find an address if there is difficulty.

44. The Procedures Manual regulates all aspects of field work by prescribing the manner in which the Field Representatives are to act and what they are to say.

45. For example, the Procedures Manual states that if the employee arrives ". . . at a gated community with a guard, simply tell them you have a delivery for the person at the specific address. This is the same for business addresses that have the receptionist or security station."

46. The Procedures Manual regulates the sequence of performing the Field Representative's job duties. For example, the Field Representative is required to take pictures of the home or office as soon as they pull up at a debtor's location.

47. The Field Representative is required to follow a script when arriving at the location of a debtor. For example, the Field Representative is required to state "Hi! I have a delivery for John Smith. Is he here?" The Field Representative is also told what to say in response. These instructions include what to do if the debtor is not home.

48. After a field call, the Procedures Manual sets forth the precise procedures for saving paperwork which includes how the paperwork is to be stored and uploaded.

49.     The Procedures Manual regulates the number of photographs of collateral that must be taken and how the Field Representative is to react if the debtor refuses permission to photograph. Even the resolution of the photographs is regulated by the Procedures Manual.

50.     The Procedures Manual directs the Field Representative on the content and manner of completing and producing reports and provides a complete set of data entry terms and conditions that must be complied with.

51.     The Procedures Manual addresses what the Field Representative must do in the event that the address provided by Defendants is not valid and requires the Field Representative to take certain steps on his or her software system to find a good address.

52.     The Procedures Manual contains numerous miscellaneous sections that regulate the form and content of telephone calls, compliance with no trespassing signs, and even discussions with non-debtor third parties.

53.     Upon information and belief, at all relevant times, these policies and procedures are applied uniformly to all Field Representatives, each of whom was forced to comply with each of these requirements.

54.     Defendants require that Field Representatives follow the "Best Practices" guidelines. Field Representatives are expected to comply with these guidelines, specifically informing them to "carefully review specific instructions listed in each field visit work order."

55.     Defendants also send newsletters to Field Representatives containing information related procedures, guidelines, pay, and other parameters. For example, one newsletter informed Field Representatives that they would not be paid if they did not "check in" via Defendants tracking system, and if the photos they uploaded did not match the corresponding "check in" locations, Field Representatives would not be compensated for assignments.

56. The determining factor as to whether Plaintiff and those similarly situated Field Representatives are employees or independent contractors under the FLSA cannot be regulated by any contract or by the Agreement. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic realty test. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic realty, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

57. Courts generally utilize the following factors to determine economic dependence and employment status:

    a. The degree of control exercised by the alleged employer;

    b. The relative investment of the alleged employer and employee;

    c. The degree to which the employee's opportunity for profit and loss is determined by the employer;

    d. The skill and initiative required in performing the job;

    e. The permanency of the relationship; and

    f. The degree to which the alleged employee's tasks are integral to the employer's business.

Applying the economic realty test, Plaintiff and those similarly situated Field Representatives have established economic dependence on the Defendants and that they are employees and not independent contractors.

58. Plaintiff and all similarly situated Field Representatives are not in business for themselves and truly independent, but rather are economically dependent upon employment with Defendants.

59. Plaintiff and all similarly situated Field Representatives are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the Field Representatives are the basis for Defendants' business and thus constitute an integral part thereof.

60. Defendants obtained the debtors that are assigned to the Field Representatives which are parsed out based on Defendants' allocation process.

61. Defendants retained complete and total control over the activities of the Field Representatives and regulate all aspects of the job.

62. Plaintiff and all similarly situated Field Representatives' economic status is inextricably linked to conditions over which Defendants have complete control, including, without limitation, the method by which their work is performed, the amount of time their work must be completed, the physical locations where they must travel to, the amount they are to be paid, and the manner by which they perform their work.

63. In addition, Defendants require Field Representatives to complete ongoing training related to debt collection, collection practices and procedures, and guidelines Field Representatives must follow with regard to their communications, interactions, and method by which they complete their assignments for specific customers. Defendants require that this training be completed on an ongoing basis, and must be done in the time period allotted in order for Field Representatives to continue to receive work assignments from Defendants.

64. Plaintiff and all similarly situated Field Representatives are not required to have any specialized or unique skills to perform their job. In fact, the job duties are manual labor and do not incorporate any particular skill, judgment or expertise, but instead, simply require the

Field Representative to read from the Defendants' script and follow its procedures which outline all aspects of the Field Representative job.

65. Plaintiff and all similarly situated Field Representatives have no control over the debtors whom they seek to contact, nor do they participate in any efforts to increase Defendants' customer base.

66. Plaintiff and all similarly situated Field Representatives' financial investment is minor when compared to the investment made by Defendants in the business at hand. All capital investment and risk belongs to Defendants. Absent Defendants' investment in provision of the business activities that Field Representatives perform, no money would be earned.

67. The job of a Field Representative is an integral part of Defendants' business and critical to Defendants' success. Without Field Representatives, Defendants would not be able to hold themselves out as the leaders in field service contact industry.

68. Accordingly, Plaintiff and all similarly situated Field Representatives are economically dependent on Defendants and are thus employees and not independent contractors.

## JOINT EMPLOYER ALLEGATIONS

69. At all times pertinent hereto, Defendants jointly exercised supervisory responsibilities and substantial control over the terms and conditions of Plaintiff and all similarly situated Field Representatives' work including, but not limited to, assigning work and compliance with express written procedures that regulate all aspects of the Field Representative job.

70. Defendant, RP, at all times, was the agent of Defendant NCCI, and acted as an exclusive contractor with NCCI for purposes of hiring Field Representatives, all of whom were

required to comply with NCCI and RP's policies and procedures which were identical and mutually adopted by both Defendants.

71. The Procedures Manual was written by Defendant, NCCI, and serves as a conduit by which NCCI and RP jointly controlled the work conditions and activities of all Field Representatives.

72. The manner by which Plaintiff and all similarly situated employees were paid was designed, implemented and enforced by both Defendants.

73. Both Defendants had the ability to terminate Plaintiff and all similarly situated Field Representatives' employment.

74. Defendant NCCI, acting through Defendant, RP, and other entities like RP, employs Field Representatives throughout the United States under the same terms and conditions as set forth above.

75. Accordingly, Defendants are "employers" under the FLSA and, as such, are jointly and severally liable for all FLSA damages for their joint failure to comply with the FLSA's overtime requirements regarding Field Representatives.

## COLLECTIVE ACTION ALLEGATIONS

76. Plaintiff, on behalf of herself and the Nationwide FLSA Collective, re-alleges and incorporates by reference the above paragraphs as set forth herein.

77. Plaintiff and the Nationwide FLSA Collective are victims of Defendant's widespread, repeated, and consistent illegal policies that have resulted in violations of their rights under the FLSA, 29 U.S.C. § 201 *et seq.*, and that have caused significant damage to Plaintiff and the FLSA Collective.

78. Defendants have engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et. seq.* as described in this Complaint in ways including, but not limited to, failing to pay employees overtime compensation and minimum wages.

79. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b). Plaintiff and the similarly situated individuals worked for Defendants as Field Representatives. The proposed collective class under the FLSA is defined as follows:

> All Field Representatives who performed services for Defendants at any time within three years prior to the filing of the Complaint (the "FLSA Collective").

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT FOR FAILURE TO PAY OVERTIME COMPENSATION

*On Behalf of Plaintiff and the FLSA Collective*

80. Plaintiff, on behalf of herself and the FLSA Collective, re-alleges and incorporates by references the above paragraphs.

81. This claim arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et. seq.*, for failure to pay overtime compensation to Plaintiff and members of the FLSA Collective.

82. The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendants and protects Plaintiff and the FLSA Collective.

83. Defendants, pursuant to their policies and practices, refused and failed to pay overtime wages to Plaintiff and the FLSA Collective.

84. By failing to compensate Plaintiff and the FLSA Collective, Defendants violated, and continue to violate, Plaintiff's rights under FLSA, 29 U.S.C. § 207.

85. The forgoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255, without a good faith or reasonable basis.

15

86. Plaintiff, on behalf of herself and the FLSA Collective, seeks damages for unpaid wages, liquidated damages as provided under the FLSA, interest, and such other legal and equitable relief as the Court deems proper.

87. Plaintiff, on behalf of herself and the FLSA Collective, seeks recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA.

### COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT FOR FAILURE TO PAY MINIMUM WAGE

88. Plaintiff, on behalf of herself and the FLSA Collective, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

89. This claim arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et seq.* by failing to pay a minimum wage to Plaintiff and members of the FLSA Collective.

90. Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiff and the FLSA Collective were entitled to be compensated at the applicable minimum wage rates provided therein.

91. Defendants, pursuant to their policies and practices, failed to pay the required minimum wage to Plaintiff and the FLSA Collective.

92. By failing to compensate Plaintiff and the FLSA Collective the minimum wage, Defendants violated, and continue to violate, their statutory rights under the FLSA, 29 U.S.C. § 206.

93. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255, without a good faith or reasonable basis.

94. Plaintiff, on behalf of herself and the FLSA Collective, seeks damages for unpaid wages, liquidated damages as provided under the FLSA, interest, and such other legal and equitable relief as the Court deems proper.

95. Plaintiff, on behalf of herself and the FLSA Collective, seeks recovery of attorney's fees and costs to be paid by Defendants as provided by the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b);

B. Authorizing prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to be sent to the FLSA Collective;

C. Declaring that Defendants willfully violated the FLSA;

D. Awarding Plaintiff and the FLSA Collective all damages allowable under the FLSA including, but not limited to, minimum wage, unpaid overtime, and liquidated damages;

E. Granting judgment in favor of Plaintiff and the FLSA Collective and against Defendants, and awarding lost minimum wage and overtime compensation for the past three years;

F. Awarding reasonable attorneys' fees and costs incurred in prosecuting this action;

F. Permitting leave to amend to add claims under any applicable state laws;

G. Awarding pre and post-judgment interest on all amounts awarded herein; and

H. For all such further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of the putative FLSA Collective demands a trial by jury.

Dated: May 9, 2018

s/ *John T. Sparks*
AUSTIN & SPARKS, P.C.
John T. Sparks, GA Bar No. 669575
2974 Lookout Place, N.E., Suite 200
Atlanta, GA 30305
Telephone: (404) 869-0100
Facsimile: (404-869-0200
JSparks@austinsparks.com

NICHOLS KASTER, PLLP
Michele R. Fisher, GA Bar No. 076198*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
fisher@nka.com

BOHRER BRADY, LLC
Philip Bohrer, LA Bar No. 00792194*
Scott E. Brady, LA Bar No. 24976*
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana  70809
Telephone:  (225) 925-5297
Facsimile: (225) 231-7000
phil@bohrerbrady.com

*Pro Hac Vice forthcoming*